ALLEN, J.
Most of the principles involved in this case have been settled by the adjudications of this Court. The lien of a judgment is a legal lien. The question of notice has no influence upon it, or had not until the passage of the recent statute requiring judgments to be recorded to preserve the lien. What influence that statute may have upon a purchaser with notice of an unrecorded judgment, it is not necessary now to consider, as this case must be decided according, to the law's previously in force. By those laws, the debtor was left in the enjoyment of the legal title, subject to the right of the judgment creditor to charge the lands; and the purchaser from the debtor took the legal title subject to the legal lien, whether a purchaser with or without notice of the judgment.
In this case the Commonwealth had obtained judgment. This gave her a lien upon the lands of the debtors, the extent of which will be considered hereafter. If on an execution against Fowler (supposed to be the principal debtor) his property had been seized, and a forthcoming bond been executed, this bond, if it proved effectual, would have operated as a satisfaction of the judgment. But this Court held in Garland v. Lynch, 1 Rob. R. 545, that the security in a forthcoming bond, upon the forfeiture thereof, became bound for the original debt; and in the case of Robinson & als. v. Sherman & als., ante, 178, that such security having discharged the debt, is entitled to be substituted to all the rights of the creditor against the original debtor. Those cases also decided, that the execution and forfeiture of the forthcoming bond by one of several joint debtors did not utterly discharge the original joint debtors; *but that if the forthcoming bond proved unavailing, it- would still be competent to proceed on the judgment against the other joint debtors, until satisfaction was obtained; and, therefore, that the security in a forthcoming bond given. *432 by one, was entitled, on paying the debt, to the remedies of the creditor against the others. If Hiller then, in the case under consideration, were the surety of the original debtor, and had paid the debt, there could be no doubt, under these authorities, of his right to substitution to the lien of the judgment against his principal; unless, indeed, the form of the execution has operated some change in the rights of the parties. The creditor here resorted to the ca. sa., and after taking out a ca. sa. and getting it executed, he can no longer stand on the lien of the judgment. Rogers v. Marshall, 4 Leigh 425. This is certainly true, under the decisions of this Court, so far as respects the creditor, and with respect to the debtor on whom the ca. sa. is executed. Yet the service of the ca. sa. is not an actual discharge of the judgment. If it proves unavailing, should the debtor die in custody, escape, or take the oath of insolvency, the creditor,in the first two instances, is remitted to his original judgment; and in every case, where there are joint debtors, upon some of whom the ca. sa. has not been executed, he would, I presume, as against them, stand upon his original judgment after the ca. sa. remedy had been exhausted against the defendant served with process. Though it would not be competent to sue out a fi. fa. or an elegit against some of the defendants whilst others were in custody under the ca. sa., if the defendants in custody should die, or take the oath of insolvency, the creditor could sue out his elegit against the others. The capacity existing to take out the elegit, will preserve the lien of the judgment as against them, for when sued out, it must, by the terms of the writ, refer to, and bind all lands owned by the debtor at the date of the judgment.
*Where a fi. fa. is levied on a sufficiency of goods, the property of one of several defendants, a new execution cannot issue on that judgment until the levy is exhausted. So that if the levy proved effectual by the payment of the money, it might be contended with the same propriety, that the lien of the judgment was gone, and there could be nothing to which the security could be substituted. In almost every case of substitution, the debt as respects the creditor, has been paid; his claim is satisfied and discharged; but in equity, and for the benefit of the surety, it is not looked upon as extinguished, but transferred with all its obligatory force against the principal. Powell’s ex’ors v. White, &c., 11 Leigh 309. So that giving to the levy of the ca. sa. or the fi. fa. executed the effect of satisfaction, it would not take away the surety’s right to substitution. But the cases referred to clearly shew, that as respects the creditor himself, the service of the ca. sa. or levy of the fi. fa. are not a satisfaction of the judgment. It still subsists for the benefit of the creditor until satisfaction is actually made; and thus subsisting, when the surety in the forthcoming bond becomes bound for the debt, no act of the creditor can deprive the surety of the benefit of it. If on judgment against principal and surety, the latter pay the debt before execution, his right to be substituted to the lien of the judgment' would scarcely be controverted. The fact that he has been compelled to pay it under process of execution, either against his person or his property, cannot place him in a worse position. To hold that it did, would be to make his rights dependent on the caprice of the creditor. As .regards the latter, it may be the humane policy of the law to discourage the harsh process of execution against the body, and, therefore, to confine him to the lien of his ca. sa. executed when he resorts to that remedy. But his act should not deprive the surety of any right which once existed for his benefit. In this case, therefore, if *Miller, upon the service of the ca. sa. upon him, had paid the debt, it seems to me, he would have a clear right to substitution against the principal. He is responsible to his surety in the forthcoming bond who has paid it for him. His surety should then be permitted to stand in his shoes, and assert all his rights. Indeed, he occupies still higher ground, for this Court held in Garland v. Lynch, that the surety in the forthcoming bond becomes surety for the debt itself, under the terms of the law; and, therefore, a supplemental security for the original debtor; and, as regards the principal, he does not occupy the position of one voluntarily intromitting himself, in invitum. It was the duty of the principal to have discharged the debt and relieved his surety; failing in this, he cannot be heard to allege that the surety to relieve his person or property, which the law allows, has brought in another security who, upon paying the debt, may acquire rights against him.
It is objected that there is no evidence Miller was a security of Fowler. The bill avers it, but the answer puts the plaintiff upon proof of its allegations. This objection seems to have been taken for the first time in the appellate Court. Fowler appears to have been considered as principal throughout the case in the Court below; and it is probable evidence of the fact was not filed because of its notoriety. As the case must go back on other grounds, it is not necessary, to consider this objection farther. If the fact is as seems to have been conceded in the Court below, the proof can be supplied.
It is contended that there was error in directing a sale of the whole of the land instead of a moiety. If this were a new question, now for the first time to be decided, I should incline to think that the judgment of the Commonwealth bound the whole of the debtor’s lands. At the common law the body, land, and goods, of the debtor were liable to the King’s execution; for Thesaurus regis est pacis vinculum, et bellorum nervi. 3 Coke’ R. 12 b. ; ^Herbert’s Case. And though this arises from the royal prerogative, it *433 is not a prerogative incident to the person of the King, but attaching to him in his political character as head of the State, and for public weal. The reason for its existence is as applicable to the government now as-it was before the revolution. The objection to the establishment of such a rule here, upon the ground that every debt of the King, whether of record or not, binds the debtor’s lands from the time of its creation, seems not to be well founded. The authority for the position is a remark of Gerard in the case of Mines, Plowden 310, spoken arguendo. The correctness of the remark was considered in the case of the King v. Smith, Wightwick 34, 6 Eng. Exch. R. 431. M’Donald, Chief Baron, reviewed all the authorities, and shews very clearly that lands of a simple contract debtor of the King, are not bound by such debt; that the debtors whose lands were so bound by the common law, were those whose debts were of record, or who were the King’s accountants, collectors, &c. whose debts were treated as debts of record.
In the absence of any statute of Virginia, or decision of this Court, there would be nothing in the nature of our institutions, or the preference claimed, to authorize us in saying that the Commonwealth had not the same rights which by the common law were possessed by the King. But by the act for the more speedy recovery of debts due to the Commonwealth, passed the 7th January' 1788, 12 Hen. Stat., p. 558, the right was given to take and sell, under a fieri facias, the lands of sheriffs and other public collectors, under judgments obtained after the passage of the act; and it was furthermore provided that judgments in favour of the Commonwealth should bind the lands of the sureties of such collectors, &c. We have seen that by the common law the lands of such collectors were bound from the creation of the debt, their debts being in the nature of debts *of record, from whence it is inferred that it was the intention of the Legislature to mitigate the rigour of the common law, by bringing down the lien from the creation of the debt to the date of the judgment ; and also to substitute the speedy remedy of a sale under a fi. fa. for the ex-tendi facias. It is most probable the Legislature did not consider the common law in regard to the King’s prerogative in force in Virginia, or there would have been no good reason for confining the remedy to judgments obtained after the passage of the act. If the lien existed and could have been enforced by an extendi facias, prior to the passage of the act, the remedy by sale under fieri facias would probably have been extended as well to prior as subsequent judgments. This construction is aided by the proviso to the first section, declaring that the act should not extend to securities who became so prior to the passage of the act: shewing that the Legislature did not design to increase the liabilities of securities by giving the act a retrospective operation. But if they had considered that the lands of such securities were bound by a judgment according to the common law, there would have been no necessity for such a proviso. The statute, however, has received a judicial construction, and as perhaps few questions of the kind can ever arise again under the lawas it existed prior to 1788, there is no good reason for disturbing it. Since 1788, a judgment in favour of the Commonwealth binds all the lands of a public collector. And by the act of 23d February 1822, Supplement to Rev. Code 339, the law is made general, and applies to all public debtors. The question upon the act of 1788, arose in the case of Nimmo’s ex’or v. The Commonwealth, 4 Hen. & Munf. 57. A judgment had been obtained against the sheriff in 1786. In 1799, a scire facias was sued out to revive the judgment against his executor, who pleaded fully administered. In his account adduced in support of his plea, he had charged himself *with the proceeds of a tract of land which his testator had devised to be sold. The General Court held he was bound to take notice of judgments against his testator, and disallowing his credits, charged him with the proceeds of the land sold as legal assets. In the petition for a supersedeas, it was assigned for error, that the proceeds of the land were equitable assets, and as such distributable pari passu among all the creditors of the testator; and that if even legal assets, the bond debts were entitled to a share, since the judgment was prior to the act of assembly subjecting lands to the judgment of the Commonwealth.
Another question was discussed, whether the act of limitations was not a bar to the scire facias. All the Judges held that it was not; and so holding, it would have necessarily followed, if the judgment rendered prior to the act of 1788, bound all the lands of the defendant, the Commonwealth would have been entitled to the proceeds. Judge Tucker, as to this branch of the case, says: “The act making sheriffs’ lands liable to the Commonwealth’s judgments did not pass until eighteen months after the judgment in this case;” and held that the General Court should have disregarded the proceeds of the land as not being legal assets, leaving the Commonwealth to pursue her remedy for a due proportion thereof pari passu with the other creditors. Judge Roane said the judgment was ‘eminently erroneous in all the particulars stated in the last seven errors assigned,” (embracing the two herein mentioned.) He referred to the reasons given; adopted them as his opinion on that part of the cause; stating further, they were all assented to by the unanimous opinion of the Court. Judge Fleming concurred, and the decree of the Court affirmed that the proceeds of the land were not legal, but equitable assets, which did not enure to the Commonwealth by virtue of her judgment, and she was only entitled to come in with the other creditors pari passu. So far as ^respected a moiety of the proceeds, this decision, *434 according' to the settled course of adjudications since, would be held clearly erroneous; for a judgment in favour of the Commonwealth should at least be entitled to as much respect as a judgment in favour of an individual ; but this perhaps was an inadvertence. The attention of the Court was directed exclusively to the act of 1788, and the rights it conferred; and the decision is express, that neither by virtue of it or any pre-existing law, was the Commonwealth entitled to a lien on the lands of its debtor. Thus virtually deciding that this branch of the prerogative was not' in force in Virginia, or was disaffirmed by the act of 1788. Yielding to this authority, I am of opinion that as this is the case, not of a public collector provided for in the act of 1788, but of a general public debtor, against whom judgment was rendered prior to the act of 1822, the Commonwealth had no greater rights than are conferred by a judgment in the case of an individual; and it was therefore erroneous to decree a sale of more than a moiety of the land. Stileman v. Ashdown, 2 Atk. R. 477.
There was also error in directing an account of the rents and profits of the land from the time of the purchase. The security is seeking to be substituted to a mere legal right. On an elegit there is no estimate of the past annual value, with a view to the recovery thereof; and the security here can claim no other rights.
For these errors, I think the decree must', be reversed, and the cause remanded. e
The other Judges concurred.
The decree of the Court was as follows:
The Court is of opinion, that under the pleadings in this case, it was premature to decree in favour of the appellee without some proof that Fowler was principal and Miller was security in the original debt. The *Court is further of opinion, that if that fact is made to appear, the said Miller and the appellee as standing in his shoes will be entitled to be substituted to the lien of the Commonwealth’s judgment against the lands of the said Fowler. The Court is further of opinion, that the lien of the judgment in favour of the Commonwealth in this case, extended to but a moiety of the lands of the debtor, and therefore that there was error in decreeing a sale of the whole tract. The Court is further of opinion, that there was error in directing an account of the rents and profits of the land.
Therefore the decree is reversed with costs, and the cause is remanded for further proceedings according to the principles of this decree.